UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JERMOND PERRY,

          Plaintiff,             Case No. 2:18-cv-200

v.                                  Honorable Gordon J. Quist

C. HORTON et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Horton, Lalonee, Miller, Corey-Spiker, Smith, Travelbee, Brown, and Unknown Parties #1 for failure to state a claim. The Court also will dismiss Plaintiff's Eighth Amendment and due process claims against the remaining Defendants.

**Discussion**

I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Central Security Threat Group (STG) Coordinators B. Travelbee and L. Brown, together with the following URF officials: Warden C. Horton; Deputy Warden Unknown Lalonee; Inspectors Unknown Miller, Unknown Hubbard, and Unknown Hough; Classification Director T. Corey-Spiker; Sergeant and STG Coordinator A. Bernherdht; Correctional Officer Unknown Smith; and the STG team (Unknown Part(y)(ies) #1).

From April 16, 2016, to April 20, 2016, the URF-West prisoner population participated in a five-day food strike challenging the allegedly inhumane prison conditions of the facility. On April 21, 2016, Defendants Hubbard and Hough called Plaintiff out of his work assignment and accused him of being a driving force behind the strike, because Plaintiff told them that he had no information about the real instigators. During the meeting, Defendants Hubbard and Hough repeatedly accused Plaintiff of being a "Solah," an African peer of the Melanic faith, and a "Spiritual Advisor" for the Melanics. (Compl., ECF No. 1, PageID.8.) They stated, "Do you know what we do to Melanics here at URF?" (*Id.*) They told Plaintiff that he should tell them who was behind the strike or "this wasn't going to be the end of what they had in store for him here at URF." (*Id.*) Plaintiff responded that the Melanic religion had not been recognized by the MDOC since January 2000, so he could not be a spiritual leader. Plaintiff told Defendants Hubbard and Hough that he intended to file a grievance about their actions and accusations. Defendants ended the meeting, saying that they would be in touch.

On May 3, 2016, Defendants Hubbard, Hough, and Bernherdht had Defendant Smith conduct a cell-search of Plaintiff's area of control. Plaintiff alleges that Smith disregarded Plaintiff's Nation of Islam religious material and his Moorish Holy Koran, but Smith confiscated Plaintiff's Radehood curriculum, attorney correspondence, certificates from the "Parenting from a Distance" program, blank sheets of paper, and hand-written Bible and Qu'ranic scriptures and ayats, as well as Plaintiff's journal. The confiscated materials were designated as contraband and turned over to Defendant Bernherdht. Plaintiff alleges that no administrative hearing has ever been conducted on the property confiscated during the search.

On May 4, 2016, Plaintiff was moved to URF East, the disciplinary side, at the instigation of Defendants Hubbard, Hough, S. Smith, and Bernherdht, who allegedly sought to transfer Plaintiff in retaliation for Plaintiff's having refused to provide information about the organizers of the food strike. On June 14, 2016, Defendants Bernherdht, Brown, and Travelbee designated Plaintiff as STG I, for being a spiritual advisor for the Melanics. Defendants gave Plaintiff the completed form (CSJ-102), containing the designation. When Plaintiff complained about his designation, Defendant Bernherdht allegedly informed him, "We should just STG II you, but since we didn't, I'll just keep you here on STG so you can't get off because you have to go through me." (*Id.*, PageID.9.) At the same meeting, Defendant Bernherdht allegedly attempted to get Plaintiff to sign the CSJ-128 form, in which he would renounce his Melanic affiliation. Plaintiff refused, as he had never completed form CSJ-177 to declare a Melanic affiliation in the first place. Defendant Bernherdht stated, "Well, if you don't sign it, it doesn't matter. This is my way of keeping an eye on you." (*Id.*, PageID.10.)

Because of Plaintiff's STG-I designation, Plaintiff was placed on unemployable status and Defendant Corey-Spiker issued a room restriction, under which Plaintiff is barred from

3

leaving his cell between 2:00 p.m. and 10:00 p.m. In addition, Plaintiff is restricted to three visits per month and five telephone calls per week. He also cannot participate in self-help programming, attend general library, send or receive J-Pay messages, or receive secure packs from family.[1] Plaintiff stated that, as a result, he cannot receive hygiene items. Plaintiff alleges that Defendants falsified the classification memorandum (Ex. E to Compl., ECF No. 1-2, PageID.40), by signing their own names in place of Plaintiff's name. However, the referenced document indicates that Defendant Bernherdht signed the form, noting that Plaintiff had refused to sign. (*Id.*)

On June 30, 2017, and July 11, 2017, Plaintiff received memos from Defendant Bernherdht, indicating that Plaintiff was being continued on STG-I classification. (Ex. K to Compl., ECF No. 1-2, PageID.72, 74.) The memos indicated that Plaintiff should contact Defendant Bernherdht after June 1, 2018, about his next review of his placement on STG-I. (*Id.*) Plaintiff kited Defendant Bernherdht after June 1, 2018, but Bernherdht did not respond. Plaintiff sent a second kite on July 6, 2018, but Defendant Bernherdht again failed to respond. On July 8, 2018, Plaintiff sent kites to Defendants Horton, Lalonee, Miller, Corey-Spiker, Brown, and Travelbee, alleging that Defendant Bernherdht and the URF STG team were neglecting their duties under MDOC policy. He received no response.

Plaintiff contends that Defendants are barred from totally banning Melanic literature under the injunction issued in the consolidated case of *Johnson et al. v. Martin et al.*, No. 2:00-cv-75 (W.D. Mich. Dec. 7, 2005). (*See* Ex. J to Compl., ECF No. 1-2, PageID.59-60.) Instead, officials were required to evaluate each piece of literature for dangerousness to the institution. Plaintiff contends that Defendants therefore should have known that prisoners were entitled to keep certain Melanic literature. He contends that Defendants Hubbard, Hough, Smith,

---

[1] MDOC Policy Directive 04.04.113 ¶ BB sets forth the restrictions to be placed on a prisoner designated as an STG-I member, which include placement on unemployable status and the other restrictions recited by Plaintiff.

4

and Bernherdht engaged in an "intentional plot of retaliation and racially profiling by applying an arbitrary and unjustifiable STG and ban on all alleged religious Melanic literature due to the riot that took place in December 1999 and the non-violent protest in April 2016 . . . ." (Compl., ECF No. 1, PageID.14.)

Plaintiff argues that he has been subjected to retaliation for his failure to provide information about the protest organizers, that his Melanic literature was confiscated without due process, that he was denied redress of his grievances, and that he has been subjected to unsatisfactory prison conditions. He contends that these actions violated his rights under the First, Eighth, and Fourteenth Amendments.

Plaintiff seeks a permanent injunction lifting his STG designation, transferring him to another facility, and enjoining his return to URF. He also seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. <u>Supervisory liability</u>

Plaintiff fails to make specific factual allegations against Defendants Horton, Lalonee, Miller, Travelbee, Brown, and Unknown Parties #1, other than his claim that they failed to conduct an investigation in response to his letters and grievances and failed to supervise Defendants Hubbard, Hough, Bernherdht, and Smith.  Plaintiff also appears to allege that Defendant Corey-Spiker failed to respond to his complaint that he had been improperly classified to STG-I and failed to supervise Defendants Hubbard, Hough, and Bernherdht.

6

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Horton, Lalonee, Miller, Travelbee, Brown, and Unknown Parties #1engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them. To the extent that Plaintiff alleges that Defendant Corey-Spiker failed to respond to his complaints or to supervise Defendants Hubbard, Hough, and Bernherdht, Plaintiff fails to state a claim against Defendant Corey-Spiker.

IV.     Eighth Amendment

Plaintiff alleges that the actions of Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the

"unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff fails to allege facts suggesting that he has been deprived of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 348. The mere fact that he is restricted to his cell during working hours and has lost other privileges as a result of his unemployed status falls far short of implicating the Eighth Amendment. Indeed, the Supreme Court has held that even placement in segregation, which involves many more restrictions than unemployed status, is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981)); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Notwithstanding his restrictions, Plaintiff is housed at Level II, a level far lower than segregation.[2] Moreover, although Plaintiff complains that his lack of a job prevents him from earning money to buy hygiene items, he utterly fails to allege specifics about his inability to obtain minimally necessary hygiene items. Under prison policy, necessary hygiene items will be supplied if the prisoner lacks the resources to purchase them. *See* MDOC Policy Directive 03.03.130 ¶ C ("Prisoners shall be provided or permitted to purchase personal hygiene items . . . ."); MDOC

---

[2] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011).

8

Policy Directive 04.02.120 ¶¶ B (providing that a prisoner with a spendable balance less than $11.00 per month in his trust fund may be eligible for indigent status) and D (allowing for indigent loans of up to $11.00 to be used for, among other things, the purchase of hygiene items). Because Plaintiff fails to allege that he has actually been denied access to hygiene items for a significant period of time, his general allegations about his inability to earn money fall short of demonstrating an Eighth Amendment violation.

In sum, although it is clear that Plaintiff was denied certain privileges as a result of his STG-I and unemployed status, he does not allege or show that he was denied basic human needs and requirements. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

V. Due Process

Plaintiff alleges that, on the orders of Defendants Hough, Hubbard, and Bernherdht, Defendant Smith conducted a cell-search of Plaintiff's area of control. During the search, Defendant Smith allegedly confiscated certain religious writings and other written materials that Plaintiff contends should not have been confiscated. Plaintiff alleges that he never received a hearing on the confiscated items. He contends that the taking of the materials violated his Fourteenth Amendment right to due process. Plaintiff also contends that Defendants Hubbard, Hough, and Bernherdht violated his right to due process by placing him on STG-I status on the basis of his possession of materials related to the Melanic religion. He further alleges that Defendant Corey-Striker deprived him of his right to due process by removing him from his job and classifying him to unemployed status on the basis of his STG-I classification.

Plaintiff's due process claim concerning the taking of his property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474

U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the

deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim arising out of the taking of his property will be dismissed.

Plaintiff's allegation that Defendants Hubbard, Hough, and Bernherdht improperly placed him in STG-I classification also fails to state a due process claim. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id.; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same);

11

*O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Plaintiff's designation as a "Security Threat Group Member" is nothing more than a security classification used by the prison. Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim against Defendants Hubbard, Hough, and Bernherdht.

Finally, to the extent that Plaintiff complains that Defendant Corey-Spiker deprived him of his employment and classified him to unemployed status without due process, Plaintiff also fails to state a claim. The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment. Because Plaintiff raises no other claim against Defendant Corey-Striker, the Court will dismiss the complaint against Defendant Corey-Striker.

VI.     Retaliation

Plaintiff alleges that Defendants Hubbard, Hough, and Bernherdht retaliated against him by initiating a search and illegal confiscation of his property and by falsely charging him with being a Melanic leader and placing him in STG classification. Plaintiff also appears to allege that, by following the orders of Hubbard, Hough, and Bernherdht to search Plaintiff's cell, Defendant Smith retaliated against him.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that his refusal to tell officials who had initiated a prison food strike amounted to protected speech. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment

rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Second Circuit Court of Appeals, in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), recently considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id*. at 88-93; *but see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails.").

Given the "likelihood of disruption to prison order or stability" implicated by prisoners engaging in group action such as a food strike, *see Jones*, 433 U.S. at 132, it is not at all clear that Plaintiff had a protected First Amendment interest in refusing provide information about who had initiated the strike. The Court, however, deems the question beyond the scope of initial screening. Nevertheless, with respect to Defendant Smith, Plaintiff's retaliation claim against Defendant Smith is wholly conclusory.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987));

*see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Smith. He has not presented any facts to support his conclusion that Defendant Smith retaliated against him for his refusals to tell Defendants Hubbard, Hough, and Bernherdht what they wanted to know. Indeed, based on Plaintiff's own allegations, Defendant Smith simply conducted a cell-search on the orders of those Defendants and confiscated materials that Plaintiff believes should not have been confiscated. Under these circumstances, Plaintiff's speculative allegation that Defendant Smith retaliated fails to state a claim. Because Plaintiff raises no claims against Defendant Smith that have not been addressed, the Court will dismiss Plaintiff's complaint against Defendant Smith.

At this juncture, however, the Court concludes that Plaintiff has sufficiently alleged a retaliation claim against Defendants Hubbard, Hough and Bernherdht.

VII. <u>Pending motion</u>

Also before the Court is Plaintiff's motion seeking a hearing on his complaint (ECF No. 4). Given that the Court has not yet served any portion of his complaint and no pending matter requires a hearing, the motion will be denied without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Horton, Lalonee, Miller, Corey-Spiker, Smith, Travelbee, Brown, and Unknown Parties #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also

15

will dismiss Plaintiff's Eighth Amendment and due process claims against the remaining Defendants.  Further, Plaintiff's motion for a hearing (ECF No. 4) will be denied without prejudice.


Dated:   January 24, 2019                   /s/ Gordon J. Quist        
                                                      Gordon J. Quist
                                                      United States District Judge