UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERMOND PERRY #427193,

        Plaintiff,

v.

PETE HUBBARD, et al.,

        Defendants.
_____/

Case No. 2:18-cv-00200

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This is a civil rights action brought by state prisoner Jermond Perry pursuant to 42 U.S.C. § 1983. Perry claims that Hubbard, Hough, and Bernhardt retaliated against him, in violation of the First Amendment.[1] Specifically, Perry alleges that Defendants Hubbard, Hough, and Bernhardt retaliated against him by initiating a search and illegal confiscation of his property and by falsely charging him with being a Melanic leader and classifying him with a Security Threat Group (STG) status.

Defendants Hubbard, Hough, and Bernhardt have filed a motion for summary judgment asserting that Perry has failed to exhaust his administrative remedies.

---

[1] Perry's complaint alleged a number of constitutional claims against several defendants. On January 24, 2019, the Court dismissed all of Perry's claims against Defendants Horton, Lalonde, Miller, Corey-Spiker, Smith, Travelbee, Brown, and Unknow Party #1. (ECF Nos. 8 and 9.) The Court also dismissed Perry's Eighth Amendment and Due Process claims against the remaining defendants leaving only retaliation claims against the three remaining Defendants. (*Id.*)

1

(ECF Nos. 27 and 28.) Perry has responded, and Defendants have replied. (ECF Nos. 31, and 33.) The undersigned has reviewed the pleadings and association documents and respectfully recommends that the Court (1) grant Defendants' motion for summary judgment and (2) dismiss Perry's First Amendment retaliation claims against Hubbard, Hough, and Bernhardt without prejudice.

## II.   Perry's Factual Allegations

This Court summarized Perry's claims against the remaining Defendants in its screening opinion. There, the Court wrote the following:

> Plaintiff alleges that Defendants Hubbard, Hough, and Bernherdht retaliated against him by initiating a search and illegal confiscation of his property and by falsely charging him with being a Melanic leader and placing him in STG classification. Plaintiff also appears to allege that, by following the orders of Hubbard, Hough, and Bernherdht to search Plaintiff's cell, Defendant Smith retaliated against him.

(ECF No. 8, PageID.117.)

## III.  Summary of Grievances Filed by Perry and Pursued Through Step III

The grievances filed and pursued by Perry through Step III are summarized in the table below.

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 28-4, PageID. |
|---|---|---|---|---|
| URF-18-07-1946-21Z | Sgt. Bernhardt, URF STG Coordinators, and other MDOC employees handling STG status | On 7.6.18, Perry complained about not receiving his annual review of his STG status. No retaliation issue is raised. | Denied at Step I; denial upheld through Step III | 194-203 |
| URF-18-07-2003-28A | Warden Horton, Deputy Warden Lalonde, | On 7.8.18, Perry sent kites requesting | Rejected at Step I for being duplicative of | 204-208 |

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 28-4, PageID. |
|---|---|---|---|---|
|  | Inspector Miller, Class. Dir. Corey-Spiker, STG Cord. Travelbee, STG Cord. Brown | criteria to be removed from STG status. No retaliation issue is raised. | grievance URF-18-07-1946-21Z; rejection upheld through Step III |  |
| URF-18-03-0931-28E | C/O Smith and Sgt. Bernhardt | On 5.3.16, Perry challenged Smith's and Bernhardt's "confiscation of religious Melanic literatures." No mention of retaliation. | Rejected at Step I for untimeliness; Rejection is upheld through Step III | 209-219 |

IV.   **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3

## V. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

4

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first

---

[2]     Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are

6

raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

---

"subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

> to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## VI. Analysis

The initial question presented is whether Perry properly exhausted his claims against Hubbard, Hough, and Bernhardt in the three grievances listed above. Defendants argue that Perry did not complain about retaliation in these grievances and that two of these three grievances were rejected. The undersigned agrees with Defendants' position. For the following reasons, the undersigned concludes that Perry failed to properly exhaust his claims against Hubbard, Hough, and Bernhardt in the three grievances listed above.

The United States Supreme Court "identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219 (citing *Ngo*, 548 U.S. at 88-91; *Porter*, 534 U.S., at 524-525).

Here, as shown in the table in Section Two, Perry filed three grievances that did not assert a claim of retaliation against the remaining Defendants. Two of these

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

8

grievances were rejected. But none of these grievances asserted claims of retaliation. Because the issue of retaliation was not raised, MDOC was not afforded the opportunity to address or potentially remedy the issue. As such, Perry failed to properly exhaust his First Amendment retaliation claims against Hubbard, Hough, and Bernhardt in the three grievances identified by Defendants.

Perry responds, however, that another grievance he allegedly filed – **URF-16-09-3267-27B** – exhausted his administrative remedies, or, at least the administrative remedies that were "available" to him. The undersigned respectfully disagrees with this position for two reasons.

First, grievance **URF-16-09-3267-27B** does not complain about specific retaliatory acts by the remaining Defendants. Thus, as with the previous three grievances, it did not give MDOC an opportunity to address the issue. Perry attached a copy of this grievance this response. (ECF No. 31-1, PageID.231.) In this grievance, Perry complained about the MDOC's Policy Directive (PD) on the Security Threat Group (STG). He asserted that this PD was applied in an arbitrary, whimsical and racially-punitive manner to Perry and other similarly situated prisoners. (*Id*.) This grievance was rejected because it challenged the content of a PD. (*Id*., PageID.232.) This grievance simply did not exhaust Perry's remedies with respect to the specific claims in this case.

Second, Perry's assertion that he nevertheless exhausted "available" remedies is also not supported by the record. Perry says that he was told to bring up his challenge to the STG PD in the Warden's Forum. (ECF No. 31, PageID.225.) He says

9

he attempted to do so, but was told by the Secretary of the Warden's Forum – Mr. Mitchell – that this issue would not be placed on the agenda. (*Id.*) Perry, citing *Ross v. Blake*, concludes that he exhausted "available" remedies. (*Id.*) In *Ross v. Blake*, the U.S. Supreme Court noted that, in rare circumstances, an administrative remedy will be considered unavailable. The Court identified three scenarios where this would be the case: (1) where officers are unable or consistently unwilling to provide relief, (2) where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or (3) "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60 (2016). Perry's case does not fall into any of these scenarios. To the contrary, the record demonstrates that the grievance procedure was available to him. The problem is clear: Perry did not make concrete allegations of retaliation against the Defendants in a timely grievance that he pursued through to conclusion. His general complaints about the content of a PD also does not constitute exhaustion of specific claims against specific Defendants. Thus, the grievance procedure was available to him.

## VII. Recommendation

The undersigned respectfully recommends that this Court (1) grant Defendants' motion for summary judgment and (2) dismiss Perry's First Amendment retaliation claims against Hubbard, Hough, and Bernhardt without prejudice. If the Court adopts this recommendation, the case will be dismissed.

Dated:   February 3, 2020                    /s/ **Maarten Vermaat**
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).